**Exhibit 2**

## SEPARATION OF EMPLOYMENT AGREEMENT AND GENERAL RELEASE

THIS SEPARATION OF EMPLOYMENT AGREEMENT AND GENERAL RELEASE ("Agreement") by and between Kurt Brushaber ("Employee"), and ST Shared Services LLC (the "Company"), is provided to Employee on August 14, 2020.

WHEREAS, Employee was employed by the Company through August 14, 2020 ("Termination Date") and performed services for the Company and/or one or more of its affiliates;

WHEREAS, Employee is a Participant in the Mallinckrodt Pharmaceuticals Severance Plan for U.S. Employees ("Plan") which provides for certain benefits in the event Employee's employment is terminated for a reason set forth in the Plan, subject to the terms of the Plan;

WHEREAS, Employee and the Company mutually desire to terminate Employee's employment on an amicable basis; and have agreed to terms under the Plan and the resolution of any and all disputes between them.

NOW, THEREFORE, IT IS HEREBY AGREED:

1. <u>Benefits Upon Termination of Employment</u>. Whether or not Employee signs this Agreement, Employee will be entitled to the following:

    (a) <u>Earned But Unpaid Amounts</u>. Subject to the provisions of the paragraph entitled "Deductions for Amounts Owed to Company," Employee shall receive any amounts earned, accrued or owing but not paid to Employee as of the Termination Date including unused accrued Paid Time Off ("PTO") and unpaid base salary earned by Employee through the Termination Date. In addition, Employee shall receive appropriate notice pay in a lump sum, minus any applicable deductions or withholdings, as required under Section 4.01(a) of the Plan.

    (b) <u>COBRA Continuation Coverage</u>. Employee (and Employee's spouse, domestic partner or child(ren), as applicable) shall be eligible for continued coverage under the Company's group health plans as required by and pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"). Employee acknowledges the Company will provide COBRA coverage only if such coverage is timely elected by Employee (or other qualified beneficiary as defined by COBRA) and Employee is solely responsible for electing such coverage. If Employee does not elect COBRA coverage timely, Employee will not be eligible to receive COBRA coverage. Employee will be required to pay the entire premium for COBRA coverage and acknowledges COBRA coverage will end upon the expiration of the maximum period required under COBRA or earlier than such time if Employee does not pay the required premium within the applicable time period, if Employee terminates COBRA coverage, or if an event occurs that, pursuant to COBRA, permits the earlier termination of COBRA coverage.

2.  <u>Consideration to Employee for Signing This Agreement</u>.  In consideration for Employee signing this Agreement, and pursuant to the terms of the Plan, the Company agrees to provide Employee with severance benefits, in addition to those benefits described in the section entitled "Benefits Upon Termination of Employment," and modify certain benefits described in such section as follows.  All payments made hereunder shall be made as soon as is administratively practicable after the later of the Termination Date and of the end of any applicable revocation period for this Agreement.  Employee expressly authorizes the Company to make any necessary deductions, withholdings, or other reductions from amounts paid pursuant to this section.

(a)  <u>Lump Sum Severance</u>.  Employee will receive a lump sum payment equivalent to 26 weeks of Employee's current base salary in the gross amount of $93,536.04, minus any applicable deductions or withholdings or other reductions provided for under the Plan or required by applicable law.  Employee will also receive a lump sum payment in the gross amount of $38,250.00, minus any applicable deductions or withholdings or other reductions provided for under the Plan or required by applicable law, which is equivalent to 85% of 26 weeks of Employee's target weekly incentive compensation under the Sales Incentive Compensation Plan.

(b)  <u>Cash Incentive Award</u>.  In addition, you are eligible to receive your Cash Incentive Award pursuant to your letter dated April 20, 2020 in a lump sum as soon as administratively possible following receipt of your signed Separation of Employment Agreement and General Release.

(c)  <u>Benefits Lump Sum Payment</u>.  Employee will receive a lump sum payment in the gross amount of $10,228.01, minus any applicable deductions or withholdings or other reductions required by applicable law, which shall be equal to 26 times the difference between (i) the applicable weekly COBRA premium in effect on the Separation Date for the medical, dental, vision and EAP plan options in which Employee is enrolled on the Separation Date, and (ii) the weekly premium paid for such coverage by Employee as of the Separation Date.  If Employee timely elects COBRA continuation coverage, Employee will be required to pay the entire premium for COBRA continuation coverage and shall be responsible for paying such premium during the applicable COBRA continuation coverage period.

(d)  <u>Outplacement Services</u>.  The Company shall pay the cost of outplacement services for the Employee at the outplacement agency the Company regularly uses for such purpose for a period of six (6) months and at the level of services offered to similarly-situated Company employees.

(e)  <u>Deductions for Amounts Owed to Company</u>.  With respect to any amounts paid pursuant to this Agreement not subject to Internal Revenue Code Section 409A, the Company reserves the right to make deductions in accordance with applicable law for any monies owed to the Company by Employee and, by signing this Agreement, Employee expressly authorizes such deductions.  Such amounts owed include, but are not limited to, the value of any Company property Employee has lost, damaged or retained in Employee's possession, amounts owed under any (i) relocation expense arrangement, (ii) sign-on bonus arrangement, (iii) tuition reimbursement program, (iv) visa expense reimbursement program, or (v) program or loan which provides for Employee's reimbursement of amounts to the Company, draws or other funds advanced to

Employee which were not yet earned, or any other overpayment of compensation or benefits to Employee, in any form. Such deductions can be made to the extent permitted by applicable law from any amounts owed to Employee including, but not limited to, base salary, commission, bonus, salary continuation payments made pursuant to this Agreement, PTO pay, or expense reimbursement. Any amounts Employee still owes after such offset must be paid within thirty (30) days of the Termination Date. With respect to any amounts paid pursuant to this Agreement that are subject to Code Section 409A, the Company reserves the right to make deductions in accordance with applicable law for any monies owed to the Company by Employee (as described above); provided, however, such deductions cannot exceed $5,000 in the aggregate in any Company fiscal year.

(f)  <u>No Further Benefits</u>. Except as provided in this Agreement or as required by the terms of a Company sponsored employee benefit plan in which Employee is participating on the Termination Date, no payment, compensation, leave time, insurance or other benefits will be furnished or paid to Employee. Except as specifically provided for in this Agreement or the terms of the applicable employee benefit plan, as of the Termination Date, Employee will cease to be eligible to participate under, or be covered by, any compensation or employee benefit plan and has no rights under any of those plans.

3.  <u>Release of All Claims</u>

(a)  <u>Employee's Release of All Claims.</u> Employee, for and in consideration of the commitments of the Company, including those set forth in the section entitled "Consideration to Employee for Signing This Agreement," and intending to be legally bound, does hereby REMISE, RELEASE AND FOREVER DISCHARGE the Company, its affiliates, subsidiaries and parents, and its officers, directors, employees, and agents, and its and their respective successors and assigns, heirs, executors, and administrators (collectively, "Releasees") from all causes of action, suits, debts, claims and demands whatsoever in law or in equity, which Employee ever had, now has, or hereafter may have, whether known or unknown, or which Employee's heirs, executors, or administrators may have, by reason of any matter, cause or thing whatsoever, from the beginning of Employee's employment to the date Employee signs this Agreement, and particularly, but without limitation of the foregoing general terms, any claims arising from, or relating in any way to, Employee's employment relationship with Company, the terms and conditions of that employment relationship, and the termination of that employment relationship, including, but not limited to, any claims arising under the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act ("OWBPA"), Title VII of The Civil Rights Act of 1964, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, the Workers Adjustment Retraining Notification ("WARN") Act, the Family and Medical Leave Act of 1993, the Genetic Information Non-Discrimination Act of 2008, the Fair Credit Reporting Act, the Equal Pay Act, the Rehabilitation Act of 1973, the Uniform Services Employment and Reemployment Rights Act (USERRA), the National Labor Relations Act, the False Claims Act, and any other claims under any federal, state or local common law, statutory, or regulatory provision, now or hereafter recognized, and any claims for attorneys' fees and costs. Employee specifically acknowledges during Employee's employment, (i) Employee was provided notice of all rights permitted under the Family and Medical Leave Act of 1993 ("FMLA"), understood those rights, was allowed to

take all leave and afforded all other rights to which Employee is entitled under the FMLA, (ii) the Company has not in any way interfered with, restrained or denied Employee's exercise of (or attempt to exercise) any FMLA rights, nor terminated or otherwise discriminated against Employee for exercising (or attempting to exercise) any such rights, (iii) if Employee is non-exempt under the Fair Labor Standards Act, Employee has been paid for all hours worked (including overtime) to which Employee is entitled, and (iv) Employee was not treated differently or in any way discriminated against because of Employee's age. This Agreement is effective without regard to the legal nature of the claims raised and without regard to whether any such claims are based upon tort, equity, implied or express contract or discrimination of any sort. Nothing in this Agreement shall be interpreted to require Employee to release any claims that cannot lawfully be released.

(b) <u>Employee's Representations</u>. To the fullest extent permitted by law, and subject to the provisions of the section entitled "Permissible Disclosures," Employee represents and affirms (i) Employee has not filed or caused to be filed on Employee's behalf any claim for relief against the Company or any Releasee and, to the best of Employee's knowledge and belief, no outstanding claims for relief have been filed or asserted against the Company or any Releasee on Employee's behalf, (ii) Employee has no knowledge of any improper, unethical or illegal conduct or activities Employee has not already reported to a human resources representative, to any member of the Company's legal or compliance departments, or to the Integrity Hotline and (iii) Employee will not file, charge, claim, sue or cause or permit to be filed, charged or claimed, any civil action, suit or legal proceeding seeking equitable or monetary relief (including damages, injunctive, declaratory, monetary or other relief) for Employee involving any matter released in this Agreement. Furthermore, Employee will withdraw with prejudice any such lawsuit or other legal action that may already be pending. In the event suit is filed in breach of this covenant not to sue, it is expressly understood and agreed this covenant shall constitute a complete defense to any such suit. In the event any Releasee is required to institute litigation to enforce the terms of this subsection, Releasees shall be entitled to recover reasonable costs and attorneys' fees incurred in such enforcement. Employee further agrees and covenants should any person, organization, or other entity file, charge, claim, sue, or cause or permit to be filed any civil action, suit or legal proceeding involving any matter occurring at any time in the past, Employee will not seek or accept personal equitable or monetary relief in such civil action, suit or legal proceeding. Although this Agreement does not preclude Employee from filing a charge of discrimination with the Equal Employment Opportunity Commission or related state agency or from participating in an investigation by such agency, Employee promises never to seek or accept any damages, remedies, or other relief for Employee personally (any right to which is hereby waived) with respect to any claim purportedly released by this Agreement.

(c) <u>No Unresolved Claims</u>. This Agreement has been entered into with the understanding there are no unresolved claims of any nature which Employee has against the Company. Employee acknowledges and agrees, except as specified in the section entitled "Consideration to Employee for Signing This Agreement," all compensation, benefits, and other obligations due Employee by the Company, whether by contract or by law, have been paid or otherwise satisfied in full or have been provided for in this Agreement. Employee further agrees the representations and understandings set forth in this Agreement have been relied upon by the Company and constitute consideration for the Company's execution of this Agreement.

4. <u>Restrictions</u>.  Any agreement signed by Employee at the time of hire or during employment regarding non-disclosure; trade secrets; confidential or proprietary information; disclosure or ownership of inventions, methods, processes or improvements; non-solicitation; or non-competition shall continue in full force and effect.

5. <u>Continued Cooperation</u>.  Employee acknowledges the Company may need to consult with Employee from time to time on a reasonable basis after the Termination Date on matters Employee had worked on prior to the Termination Date.  Employee agrees to continue to cooperate with the Company and to provide any such information as is reasonably requested by the Company.  The Company will reimburse Employee for any reasonable pre-approved expenses incurred in providing this cooperation and will not unreasonably interfere with any future employment of Employee in these requests.

6. <u>Rehire.</u>  The Company has no obligation to employ, or retain the services of, Employee in the future.

7. <u>Non-Disparagement</u>.  Subject to the provisions of the section entitled "Permissible Disclosures," Employee agrees Employee will not disparage or subvert the Company, or make any statement reflecting negatively on the Company, its affiliated corporations or entities, or any of their officers, directors, employees, agents or representatives, including, but not limited to, any matters relating to the operation or management of the Company, Employee's employment and the termination thereof.  It is the Company's current reference policy to confirm only the Employee's dates of employment, job title and most recent salary upon receipt of a reference request.

8. <u>Understanding of Consideration.</u>  Employee understands and agrees the payments, benefits and agreements provided in this Agreement, including those set forth in the section entitled "Consideration to Employee for Signing This Agreement," are being provided to Employee in consideration for Employee's acceptance and execution of, and in reliance upon, Employee's representations in this Agreement, and they are greater than the payments, benefits and agreements, if any, to which the Employee would have received if Employee had not executed this Agreement.

9. <u>Satisfaction of Company Obligations.</u>  Employee acknowledges and agrees the Company has satisfied any and all obligations owed to Employee under any employment agreement or offer letter Employee has with the Company and this Agreement fully supersedes any and all prior agreements or understandings, whether written or oral, between the parties, regarding the subject matter of this Agreement.  Employee acknowledges, except as set forth expressly herein, neither the Company, the Releasees, nor their agents or attorneys have made any promise, representation or warranty whatsoever, either express or implied, or written or oral.

10. <u>Confidentiality.</u>  Subject to the provisions of the section entitled "Permissible Disclosures," Employee agrees not to disclose the terms of this Agreement to anyone, except a spouse, attorney, or, as necessary, a tax or financial advisor.  Any violation of the confidentiality obligation imposed hereunder constitutes a material breach of this Agreement.

11. <u>Company Property</u>.

(a) <u>Company Records.</u> Employee represents, as of the Termination Date, Employee does not have in Employee's possession any records or business documents, in electronic or hard copy, or other materials (including but not limited to computer storage devices, computer programs, files and software, correspondence, customer lists, technical information, customer information, pricing information, business strategies and plans, sales records and all copies thereof) (collectively, the "Corporate Records") provided by the Company and/or its predecessors, subsidiaries or affiliates or obtained as a result of Employee's employment with the Company and/or its predecessors, subsidiaries or affiliates, or created by Employee while employed by or rendering services to the Company and/or its predecessors, subsidiaries or affiliates. Employee acknowledges all Corporate Records are the Company's property.

(b) <u>Company Property.</u> Employee represents Employee has returned all company property to Company, including, but not limited to, building I.D. and name tags, office keys and company car keys, Employee's Company computer (including laptop), cell phone or other handheld communication device (*e.g.*, iPhone or iPad), samples, cases, or brochures Employee acquired by virtue of Employee's employment.

12. <u>Permissible Disclosures.</u> Nothing in this Agreement shall prohibit or restrict Employee from: (i) making any disclosure of information required by law, (ii) disclosing the contents of the section of this Agreement entitled Restrictions to potential or subsequent employers, (iii) providing information to, or testifying or otherwise assisting in any investigation or proceeding brought by, any federal or state regulatory or law enforcement agency or legislative body, any self-regulatory organization, or the Company's designated legal, compliance or human resources personnel, (iv) reporting, filing, testifying, participating in or otherwise assisting in a proceeding relating to an alleged violation of any federal, state or municipal law relating to fraud, or any rule or regulation of the Securities and Exchange Commission or any self-regulatory organization, or (v) making other disclosures that are protected under the whistleblower provisions of federal or state law or regulation.

13. <u>Non-Admission</u>. The Company and Employee mutually agree and acknowledge the provision of benefits by the Company pursuant to this Agreement and the settlement and termination of any asserted or unasserted claims against the Releasees are not and shall not be construed to be an admission of any violation of any federal, state or local statute or regulation, or of any duty owed by any of the Releasees to Employee.

14. <u>Breach</u>. Employee agrees and recognizes should Employee breach any of the obligations or covenants set forth in this Agreement, the Company will have no obligation to provide Employee with the consideration set forth herein, and will have the right to seek repayment of all consideration paid up to the time of any such breach. Further, Employee acknowledges in the event of a breach of this Agreement, Releasees may seek any and all appropriate relief for any such breach, including equitable relief and/or money damages, attorney's fees and costs.

15. <u>Injunctive Relief.</u> Employee further agrees the Company shall be entitled to preliminary and permanent injunctive relief, without the necessity of proving actual damages, as

well as to an equitable accounting of all earnings, profits and other benefits relating to or arising out of any violations of this Agreement, which rights shall be cumulative and in addition to any other rights or remedies to which the Company may be entitled. Employee irrevocably and unconditionally (i) agrees any suit, action or other legal proceeding relating to or arising out of this Agreement, including without limitation, any action commenced by the Company for preliminary and permanent injunctive relief or other equitable relief, may be brought in the State of Missouri, (ii) consents to the non-exclusive jurisdiction of any such court in any such suit, action or proceeding, and (iii) waives any objection which Employee may have to the laying of venue of any such suit, action or proceeding in any such court. Employee also irrevocably and unconditionally consents to the service of any process, pleadings, notices or other papers by personal service or by registered or certified mail, return receipt requested, or by overnight express courier service, addressed to Employee at the home address which the Company has on file for Employee at the time such mailing occurs.

16. <u>Choice of Law</u>. This Agreement and the obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of Missouri, without giving effect to any conflict of law principles that would result in the application of any law other than the law of the State of Missouri.

17. <u>Survival of Provisions</u>. The obligations in any section containing obligations to be performed following the termination of Employee's employment with the Company or any affiliate or subsidiary shall survive such termination and shall be fully enforceable thereafter.

18. <u>Savings Clause.</u> If any term contained in this Agreement is found by a court of competent jurisdiction to be unenforceable or invalid to any extent, such finding will not affect the validity or enforceability of any other term or provision of this Agreement.

19. <u>Binding Effect; Assignment</u>. The rights and obligations of this Agreement shall bind and inure to the benefit of any successor of the Company by reorganization, merger or consolidation, or any assignee of all or substantially all of the Company's business. The Company may assign its rights and obligations under this Agreement to any of its subsidiaries or affiliates without Employee's consent, but shall remain liable for any payments provided hereunder not timely made by any such assignee. Employee's rights or obligations under this Agreement may not be assigned by Employee.

20. <u>Section 409A Compliance</u>. To the extent applicable, this Agreement will be interpreted in accordance with Internal Revenue Code Section 409A and the regulations and other interpretive guidance issued thereunder including, without limitation, any such regulations or other guidance that may be issued after the date this Agreement is executed. Notwithstanding any other provision of this Agreement, if the Company determines any provision herein is or may be subject to Code Section 409A, the provisions of Section 5.03 of the Plan apply and the Company may adopt such amendments or modify payments made hereunder or take any other action or actions the Company determines is necessary or appropriate to (i) exempt payments made hereunder from the application of Code Section 409A or (ii) comply with the requirements of Code Section 409A. Notwithstanding any other provision of this Agreement, if the period for consideration and revocation of this Agreement spans two tax years, then any payments hereunder which are subject

to Code Section 409A shall be delayed until the later of (x) the end of the applicable revocation period or (y) the first regularly scheduled Company payroll date in the second tax year.

    21.    <u>Certification and Acknowledgment</u>.  Employee certifies and acknowledges:

    (a)    Employee has read the terms of this Agreement, and Employee understands its terms and effects, including the fact Employee has agreed to RELEASE AND FOREVER DISCHARGE the Company and each and every one of its affiliated entities from any legal action arising out of Employee's employment relationship with the Company and the termination of that employment relationship;

    (b)    Employee has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which Employee acknowledges is adequate and sufficient to Employee and which Employee acknowledges is in addition to any other benefits to which Employee is otherwise entitled;

    (c)    Employee has been and is hereby advised in writing to consult with an attorney prior to signing this Agreement;

    (d)    The Company has provided Employee with a period of forty-five (45) days within which to consider this Agreement, and Employee has signed on the date indicated below after concluding this Agreement is satisfactory to Employee;

    (e)    Employee acknowledges this Agreement may be revoked by Employee within seven (7) days after Employee's execution and this Agreement shall not become effective until the expiration of such seven (7) day revocation period.  Any revocation must be submitted, in writing, to the Company, and state, "I hereby revoke my acceptance of our Agreement."  The revocation must be personally delivered or mailed to Mallinckrodt Pharmaceuticals, Attn: Human Resources Operations Manager, 675 McDonnell Blvd., Building 10-2-S, Hazelwood, MO, 63042, and hand-delivered or postmarked within seven (7) calendar days of Employee's execution of this Agreement.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday in Michigan, then the revocation period shall not expire until the next following day which is not a Saturday, Sunday, or legal holiday.  In the event of a timely revocation by Employee, this Agreement will be deemed null and void and the Company will have no obligations hereunder; and

    (f)    Employee has been provided a list, by job title and age, of all employees who are being offered severance benefits as set forth herein, including any eligibility factors, and Employee has further been provided with a list, by age and job title, of all employees within the same job classifications or organizational unit who are not eligible, and therefore, who are not being offered these severance benefits; and

    (g)    Employee does not waive rights or claims that may arise after the date this Agreement is executed.

Intending to be legally bound hereby, Employee and the Company (by its duly authorized agent) hereby execute the foregoing Separation of Employment Agreement and General Release.

EMPLOYEE

_____      ____8/14/20____
Signature                                                         Date

COMPANY

By:___*Lisa M Lucifero*___          ____8/21/20____
        Signature                                                 Date

Name: ____Lisa M Lucifero____

Title: ____Sr Director, HR____